## WALGREEN CO. v. WALTON.

Middle Section.   November 19, 1932.
Petition for Certiorari denied by Supreme Court, July 19, 1933.

216

Fyke Farmer and Bass, Berry & Sims, all of Nashville, for plaintiff in error, Walgreen Co.

O. W. Hughes, of Nashville, for defendant in error, Dr. C. Walton.

CROWNOVER, J. This was an action, brought by Dr. C. Walton against the Walgreen Company, for $25,000 damages for eviction from his offices at 512½ Church street, in the city of Nashville, occupied and used as dental offices under a lease from year to year.

Defendant filed three pleas: (1) That it was not guilty; (2) that it did not contract as averred in the declaration; and (3) that the plaintiff was occupying the offices under a lease from month to month and due notice to vacate was given him.

The case was tried by the judge and a jury. At the close of plaintiff's evidence and again at the conclusion of all the evidence, defendant moved for peremptory instructions, which motions were overruled. The jury returned a verdict of $7,500 for the plaintiff. On the hearing of motion for a new trial the court suggested a remittitur of $4,000, which was accepted by the plaintiff under protest, but overruled the motion on all other grounds, and judgment was accordingly entered for $3,500 in favor of the plaintiff and against the defendant, Walgreen Company. Defendant appealed in error to this court and assigned twenty-five errors. The material assignments are, in substance, as follows:

(1) There is no evidence to support the verdict, and the court erred in refusing peremptory instructions.

(2) The court erred in allowing plaintiff to testify, over objection, that at the time the plaintiff paid his first month's rent to the defendant, he (the plaintiff) was occpying the premises under an oral lease from year to year and had been renting the same ever since 1923 from year to year.

(3) The court erred in admitting, over objection, testimony as to the amount of the net profits that Dr. Walton had made in July and August, 1930, and for fifteen months prior to his eviction and fifteen months thereafter.

(4) The court erred in charging the jury as follows:

"A tenant having a valid lease on premises for a definite period on definite terms and conditions, who remains over after the expiration of the time without any new lease contract or arrangements by consent will be held to hold over under the same terms and conditions that were contained in his original lease."

(5) The court erred in charging the jury as follows:

"In this case it is insisted by the plaintiff that he had had a lease on the offices from which he was evicted by the year and that when that lease expired it was not renewed in writing but that he held over from year to year under the same terms and conditions that were contained in the original lease, and he insists that he was rightfully in possession of his said offices on August 1, 1930, by virtue of his holding over. He further insists that he was keeping his rent paid up by the month and that notwithstanding this he was evicted on the early morning of August 1, 1930, by the defendant through its agents and representatives in entering his office and removing his office equipment and things and placing them in storage, and that he was deprived of his property for several days and that some of it was never returned to him.

"Now, if you find from a preponderance of the evidence that this contention on behalf of the plaintiff is sustained, your verdict should be in his favor for some damages."

(6) The court erred in charging the jury as follows:

"The defendant also insists that the plaintiff had no right to occupy this office by virtue of any right of hold over, and it insists that after it acquired the lease on the building it made an arrangement with the plaintiff by which he was allowed to occupy two offices in the building at $50 per month, and then it insists that at the end of any month it had the legal right to terminate such monthly tenancy upon proper notice, which it insists that it gave the plaintiff.

"Now, if you find that this contention is sustained by a greater weight of the testimony, that is, that a new arrangement had been made that superseded and took the place of any hold-over rights from year to year that previously existed, if any in fact did exist, and that the new deal was a rental by the month, then the Court instructs you that the defendant did have the right to terminate the tenancy and regain possession of the offices at the end of any month if proper notice had been previously given, and it appears that proper notice was given in this case."

(7) The court erred in charging the jury as follows:

"If you find for the plaintiff you will go further and assess his damages. In doing so you must not allow anything for personal in-

juries for none have been shown, nor for injured feelings, but in the event you find for the plaintiff, in assessing his damages you should consider whether his property, all his property was returned to him, and the condition of that which was returned, whether it was returned in the same condition it was when it was taken, and also the length of time he was out of the use of the same and the extent of loss in professional income due directly to his eviction, and allow him such damages and only such damages as would reasonably compensate him for the loss sustained."

(8) The court erred in submitting to the jury the question of allowing the plaintiff punitive damages.

(9) The court erred in refusing to charge defendant's special requests.

(10) The verdict is so excessive as to evince passion, prejudice, and caprice on the part of the jury.

In 1923 the Lusky Jewelry Company was lessee of the building at No. 512 Church street, Nashville. In March, 1923, Dr. C. Walton subleased from it four offices on the second floor, under a written lease covering the period from April 1st through December 31, 1923. He had written leases for the years 1924 and 1925, which leases were not in evidence, as they had been destroyed. He paid a monthly rental of $85 for four rooms.

The Warner Drug Company leased this building from its owners for a term of twenty years, beginning January 1, 1926; the Lusky lease expiring on that date.

In December, 1925, Mr. Bolling Warner, representing the Warner Drug Company, called on Dr. Walton and asked him to remain in the building as a subtenant. They entered into a parol lease. Mr. Warner told Dr. Walton that the drug company must have one of his rooms to use as a prescription department; that he could rent the other three rooms for $65 a month; that the building would have to be repaired, but if he would remain in the building his rent would not begin until the repairs were completed. On the 1st of April repairs were completed and his rent began, at which time Dr. Walton asked Mr. Warner about a written lease, and Warner replied (as Dr. Walton testified): "You don't need a lease unless you want it. . . . You can go right ahead the way you have been leasing it."

Later Dr. Walton decided to surrender one room, which was permitted. and the other two offices were rented to him at $50 per month. He paid rent each month and nothing further was said about his lease until the spring of 1930.

In October, 1929, the Warner Drug Company assigned its lease of the building to Walgreen Company. The attorney for the Warner Drug Company wrote to Dr. Walton directing him to pay future rent to Walgreen Company. Dr. Walton paid Walgreen Company rent from October, 1929, to May, 1930. He did not at any time dis-

cuss the terms of his tenancy with any agent or representative of Walgreen Company.

In May representatives of Walgreen Company called on Dr. Walton and informed him that the company had subleased the upper floors of the building to Cain-Sloan Company, to take effect August 1, 1930, and wished him to surrender possession. He stated that he would have to consult his attorney. Under date of June 20, 1930, they wrote him a letter demanding possession by August 1, 1930. On June 21, 1930, Dr. Walton gave the company a check for June rent. In July the company instituted unlawful detainer proceedings. Walton engaged an attorney and prepared to defend the suit, but the company took a nonsuit. Dr. Walton tendered the rent for July, which was refused. He continued to occupy his offices.

On the night of July 31st, after 12 o'clock midnight, the company, acting on the advice of its attorneys, opened Dr. Walton's offices, using the porter's keys, and removed his furniture and equipment and stored the same in a warehouse, and proceeded the next morning to dismantle the offices, after giving notice to the plaintiff.

Dr. Walton rented offices in the Hitchcock Building, an office building nearby in the same city block, and after nine days moved into the offices which he has since occupied.

1. The plaintiff's case, as shown by the declaration and the evidence, is that in December, 1925, a parol lease was made between the Warner Drug Company and Dr. C. Walton, the terms of which (except the amount of rent and space to be occupied) were the same as those in his prior written leases which the Lusky Jewelry Company; that this was a verbal lease for the year 1926; that for the succeeding years of 1927, 1928, and 1929 he held over as tenant from year to year, nothing being said about the matter, and the landlord acquiescing in his tenancy; that in October, 1929, the Warner Drug Company assigned its lease to the Walgreen Company and plaintiff, therefore, became a subtenant of Walgreen Company on the same terms; that for the year 1930 he held over under the same lease, and was therefore a subtenant for the year 1930 when he was evicted from the offices on August 1, 1930.

The determinative question in this case, therefore, is: What were the terms of the parol lease entered into by Dr. Walton and the Warner Drug Company; that is, was a lease made for a year or by the month?

It is not disputed that Dr. Walton had a written lease for the year 1925 at the time he and Mr. Warner made the verbal lease. Mr. Warner states that he leased to him three offices at $65 a month, by the month. Dr. Walton states that when he asked for a written lease Mr. Warner said, "You can go right ahead the way you have been leasing it."

Dr. Walton testified that his written lease with Lusky Jewelry

Company had been destroyed. He attemped to prove the contents of it, but defendant objected, which objection was sustained by the court. However, enough was proven to show that Dr. Walton had rented the four rooms from Lusky Jewelry Company by the year, payable $85 per month.

The point in conflict in the testimony is whether the clause providing that Dr. Walton should lease from Warner Drug Company as he "had been leasing" was a part of the oral lease; therefore it was a question for the jury. 35 C. J., 1190, section 493.

It is admitted that nothing further was said about this lease by Warner Drug Company, and Dr. Walton continued to occupy the offices after the expiration of the year and to pay rent which was accepted by Warner Drug Company. He therefore became a tenant from year to year. 35 C. J., 1029, section 167; Noel v. McCrory, 7 Cold., 623; Jones on Landlord & Tenant, section 201; Lewis v. Bringhurst Reid Co., 155 Tenn., 177, 290 S. W., 972.

Where the tenant for a year holds over, he becomes a tenant from year to year. Nashville v. Mason, 11 Tenn. App., 344. Where a tenant pays the rent and the landlord accepts it, there is a holding over. Lewis v. Bringhurst Reid Co., supra; 35 C. J., 1034, 1035. If the landlord accepts the rent the election is final. 35 C. J., 1103; 16 R. C. L., 1167.

The assignment of the Warner lease to the Walgreen Company did not affect the lease of Dr. Walton. State v. Martin, 82 Tenn. (14 Lea), 92, 52 Am. Rep., 167; 16 R. C. L., 633-4, section 118; Jones on Landlord & Tenant, section 447; Hughes v. Donlon, 149 Tenn. 506, 261 S. W., 960, 35 A. L. R., 506.

Where the lessee is in possession, the purchaser takes subject to the lease. 35 C. J., 1214; McLean v. Caldwell, 107 Tenn., 138, 64 S. W., 16; Hughes v. Donlon, supra.

Warner states that he did not know the terms of Dr. Walton's lease with Lusky. However, if he agreed that Dr. Walton should hold under these terms, he is bound, regardless of whether he required that the written lease be shown to him or ascertained its terms.

"Throughout the formation of contracts it is to be observed that not assent, but what the other party is justified as regarding as assent, is essential. Accordingly if an offeree in ignorance of the terms of an offer so acts or expresses himself as to justify the other party in inferring assent, and this action or expression was of such a character that a reasonable man in the position of the offeree should have known it was calculated to deceive the offeror into the belief that his offer had been accepted, a contract will be formed in spite of the offeree's ignorance of the terms of the offer." 1 Williston on Contracts, 51, section 35.

While a subtenant is bound to take notice of the terms of the original lease, and may be bound by the terms of a collateral agreement

made by the lessee not put of record (Jones on Landlord & Tenant, section 455), and his term ends with the termination of his lessor's term (35 C. J., 1036, section 174), yet he is not affected with notice of a subsequent agreement of the landlord with another lessee.

The Walgreen Company purchased and took assignment of the Warner lease. Its agents claim that the Warner Drug Company told them that the Walton lease was from month to month, but they did not inquire of the subtenant, Walton, who was in possession of the property at the time, the terms of the lease. Where the lessee is in possession, the purchaser takes subject to the lease, 35 C. J., 1214; McLean v. Caldwell, supra. In the absence of an agreement to the contrary, the assignee of a lease succeeds to all the rights that were secured to the assignor by the lease, and no others. 35 C. J., 995; Bass v. Metropolitan West Side El. R. Co. (C. C. A.), 82 F., 857, 39 L. R. A., 711. Privity of estate arises from the acceptance of the leasehold estate by the assignee, and the assignee is charged with notice of the terms of the lease. 35 C. J., 997, section 97; 39 Cyc., 1756; Macon v. Sheppard, 2 Humph., 335. The assignee stands in the place of the assignor and assumes the burden of the latter's contract. Jones on Landlord & Tenant, section 445.

It results that there was evidence of a contract between Dr. Walton and the Warner Drug Company, and that the Walgreen Company purchased the Warner Drug Company's lease contract and was therefore affected with notice of the terms of the lease contract between the Warner Drug Company and Dr. Walton, and therefore there was evidence to support the verdict. Hence the first assignment must be overruled.

2. Defendant's second assignment is that the court erred in allowing plaintiff to testify, over objection, that at the time Walgreen Company took over the property in question and at the time plaintiff paid his first month's rent to the defendant Walgreen Company, he (the plaintiff) was occupying the premises under an oral lease from year to year and had been renting the same from year to year since 1923.

This testimony was as follows:

"Q. Had you been renting the property ever since 1923 from year to year? A. I had."

This testimony, taken in connection with that already introduced, was not misleading to the jury, and the assignment must be overruled. He had already testified that he had occupied the property since 1923; that he had a lease for the rest of 1923 and for a year at a time in 1924 and 1925 and 1926; and that he had held over from year to year since.

The objection that the witness stated that he had an oral lease from year to year, on the ground that it was a conclusion of the witness, is not well made, as it is a statement of a fact that would

be difficult to express in other terms. See opinion of this court in the case of Commercial Club v. Mrs. Lula B. Epperson, filed at Nashville on October 1, 1932.

3. Defendant's third assignment, that the court erred in admitting evidence, over its objection, as to the amount of Dr. Walton's net profits from his dental business for fifteen months prior to his eviction and for fifteen months thereafter, is well made and must be sustained. We are of the opinion that the plaintiff may recover damages for the loss of the profits of an established business and for loss of his professional income, as will be hereinafter discussed. But we are of the opinion that the court erred in admitting evidence of the loss of net profits by proving the profits for fifteen months prior to his eviction and for fifteen months thereafter, in lump sums, as his lease expired within five months, and he had no right to recover for any losses after the expiration of his lease. This evidence was liable to confuse the jury and was prejudicial to the defendant.

4. The fourth assignment, that the court erred in his charge that where a tenant had a valid lease for a definite period on definite terms, who remains over after the expiration of the term without a new lease contract, he will be held to hold over under the same terms and conditions as were contained in the original lease, because the defendant had done nothing from which it could be inferred that he recognized the lessee as a tenant for another term, is not well made, for the reason that the court proceeded to further on charge the jury that where the tenant held over and paid his rent each month, it constituted a holding over. Where the tenant pays the rent and the landlord accepts it, this constitutes a holding over. Lewis v. Bringhurst Reid Co., supra; 35 C. J., 1034, 1035.

5, 6. The fifth and sixth assignments, that the court erred in charging the jury that if it believed that the plaintiff was evicted while a subtenant holding over from year to year when he had paid up his rent he was entitled to recover damages, but on the other hand if the jury believed the defendant's contention that it had a new contract with plaintiff from month to month and had given him proper notice for the termination of the tenancy then the verdict should be for the defendant for the reason that the undisputed evidence showed that the tenancy was from month to month and therefore the rights of the parties under the lease became a question of law for the court, is not well made and must be overruled. As hereinabove shown, there was evidence of an oral contract for one year between the Warner Drug Company and Dr. Walton, and that he held over from year to year after the Warner Drug Company had assigned its lease to the Walgreen Company, which facts were controverted and they became questions for the jury.

7. The seventh assignment, that the court erred in charging the jury as to the proper measure of damages, as hereinabove set out, is well made, because the court did not give an altogether proper charge

on the measure of damages. The proper measure of damages is the value of the unexpired term of the lease less the rent reserved and such special damages as proximately result from the eviction, which may include the loss of net profits on an established business and the loss of professional earnings, when properly pleaded and proven. Nashville v. Mason, 11 Tenn. App., 344; 36 C. J., 282, section 1029; 16 R. C. L., 696. The jury may in fixing the amount of the tenant's damages take into consideration the profits of an established business or the professional earnings lost when the eviction amounts to a trespass. 36 C. J., 280, section 1025, and 284, section 1032; 1 Sedgwick on Damages (9 Ed.), section 188; Reeves v. Romines, 132 Ark., 599, 201 S. W., 822; Allison v. Chandler, 11 Mich., 542; Jones on Landlord & Tenant, sections 369-371; 8 R. C. L., 510; 16 R. C. L., 696-698; 22 R. C. L., 212.

It is strenuously insisted that the loss of profits is not a proper element of damages in a suit by a tenant for wrongful eviction. The leading cases on this subject are Allison v. Chandler, 11 Mich., 543, and Story Parchment Co. v. Paterson Parchment Paper Co., 282 U. S., 555, 51 S. Ct., 248, 250, 75 L. Ed., 544, the reasoning of which we approve.

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 379, 71 L. Ed. 684, 691, 47 S. Ct., 400. Compare The Seven Bros. (D. C.), 170 F., 126, 128; Pacific Steam Whaling Co. v. Alaska Packers' Ass'n, 138 Cal., 632, 638, 72 P. 161." Story Parchment Co. v. Paterson Parchment Paper Co., supra.

"None of these several considerations have any bearing in an action purely of tort. The injured party has consented to enter into no relation with the wrongdoer by which any hazard of loss should be incurred; nor has he received any consideration, or chance of benefit or advantage, for the assumption of such hazard; nor has the wrongdoer given any consideration, or assumed any risk, in consequence of any act or consent of his. The injured party has had no opportunity to protect himself by contract against any uncertainty in the estimate of damages: no act of his has contributed to the injury; he has yielded nothing by consent; and, least of all, has

he consented that the wrongdoer might take or injure his property or deprive him of his rights, for such sum as, by the strict rules which the law has established for the measurement of damages in actions upon contract, he may be able to show, with certainty, he has sustained by such taking or injury. Especially would it be unjust to presume such consent, and to hold him to the recovery of such damages only as may be measured with certainty by fixed and definite rules, when the case is one which, from its very nature, affords no elements of certainty by which the loss actually suffered can be shown with accuracy by any evidence of which the case is susceptible. Is he to blame because the case happens to be one of this character? He has had no choice, no selection. The nature of the case is such as the wrongdoer has chosen to make it; and upon every principle of justice, he is the party who should be made to sustain all the risk of loss which may arise from the uncertainty pertaining to the nature of the case, and the difficulty of accurately estimating the results of his own wrongful act. Upon what principle of right can courts of justice assume—not simply to divide this risk, which would be thus far unjust—but to relieve the wrongdoer from it entirely, and throw the *whole* upon the innocent and injured party? Must not such a course of decision tend to encourage trespasses, and operate as an inducement for parties to right themselves by violence, in cases like the present?

"Since, from the nature of the case, the damages cannot be estimated with certainty, and theirs is a risk of giving by one course of trial less, and by the other more than a fair compensation—to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrongdoer instead of the injured party? However this question may be answered, we cannot resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded cannot be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases; and where, from the nature and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract. Such is quite generally the case in trespass and trover for the taking or conversion of personal property; if the property (as it generally is) be such as can be readily obtanied in the market and has a market value. But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount

with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. And, though a rule of certainty may be found which will measure *a portion* and *only a portion* of the damages, and exclude a very material portion, which it can be rendered morally certain the injured party has sustained, though its exact amount cannot be measured by a fixed rule; here to apply any such rule to the whole case, is to misapply it; and so far as it excludes all damages which cannot be measured by it, it perpetrates positive injustice under the pretence of administering justice.

"The law does not require impossibilities; and cannot therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice ¦from the Court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury. . . .

"The evidence strongly tended to show an ouster of the plaintiff for the balance of the term, by the defendant's act. This term was the property of the plaintiff; and, as proprietor, he was entitled to all the benefits he could derive from it. He could not by law be compelled to sell it for such sum as it might be worth to others; and, when tortiously taken from him against his will, he cannot justly be limited to such sum—or the difference between the rent he was paying and the fair rental value of the premises—if the premises were of much greater and peculiar value to him, on account of the business he had established in the store. and the resort of customers to that particular place, or the good will of the place, in his trade or business. His right to the full enjoyment of the use of the premises, in any manner not forbidden by the lease, was as clear as that to sell or dispose of it, and was as much his property as the term itself, and entitled to the same protection from the laws. . . .

"To confine the plaintiff to the difference between the rent paid and the fair rental value of the premises to others, for the balance of the term, would be but a mockery of justice. To test this, sup-

pose the plaintiff is actually *paying that full rental value*, and has established a business upon the premises, the clear gains or profits of which have been an average of one thousand dollars per year; and he is ousted from the premises and this business entirely broken up for the balance of the time; can he be allowed to recover nothing but six cents damages for his loss? To ask such a question is to answer it. The rule which would confine the plaintiff to the difference between such rental value and the stipulated rent can rest only upon the assumption that the plaintiff might (as in case of personal property) go at once into the market and obtain another building equally well fitted for his business, and that for the same rent; and to justify such a rule of damages this assumption must be taken as a conclusive presumption of law. However such a presumption might be likely to accord with the fact in the city of New York, in most western cities and towns it would be so obviously contrary to the common experience of the facts, as to make the injustice of the rule gross and palpable. . . .

"But there are also cases for breach of contract where, though the profits were in their nature somewhat uncertain, and contingent (and in most of them quite as much so as in the present case), they were yet held to constitute, not strictly a measure, but an element of damages proper for the consideration of a jury, to enable them to form a judgment or probable estimate of the damages; as in McNeill v. Reid, 9 Bing., 68; Bagley v. Smith, 10 N. Y., 489 [61 Am. Dec. 756]; Gale v. Leckie, 2 Stark. 107; Ward v. Smith, 11 Price, 19; Driggs v. Dwight, 17 Wend. [N. Y.], 71 [31 Am. Dec. 283]; and see Passenger v. Thorburn, 35 Barb. [N. Y.] 17. . . .

"But whatever may be the rule in actions upon contract, we think a more liberal rule in regard to damages for profits lost, should prevail in actions purely of tort (excepting perhaps the action of trover). Not that they should be allowed in all cases without distinction; for there are some cases where they might, in their nature, be too entirely remote, speculative or contingent, to form any reliable basis for a probable opinion. . . .

"But this business seems to have been carried on with that of the sale of jewelry; he kept a jewelry store, and the profits of so much of his business as may be regarded as mercantile business, are dependent upon many more contingencies, and therefore more uncertain, especially if sales are made upon credit. Past profits, therefore, could not safely be taken as the exact measure of future profits; but all the various contingencies by which such profits would probably be affected be taken into consideration by the jury, and allowed such weight as they, in the exercise of good sense and sound discretion, should think them entitled to. Past profits in such cases, where the business has been continued for some length of time, would constitute a very material aid to the jury in arriving at a fair prob-

able estimate of the future profits, had the business still continued without interruption." Allison v. Chandler, 11 Mich., 542.

On wrongful eviction of the tenant by the landlord, resulting in injury or destruction of the tenant's business, the tenant may recover the reasonable amount of damages to his business shown to have been sustained, and evidence of loss of profits is admissible in proof of damages. Herzog v. Texas Co., 88 Mont., 580, 294 P., 962.

It is argued in the brief of defendant that there is a vast differerence in the loss of professional income such as that earned by doctors, dentists, and other professional men, and the loss of net profits in mercantile business. In other words, it is insisted that a mercantile business may be of much more value in certain localities or on certain streets in a city than on others, and that when customers or patrons once acquire a habit of going to a certain place to buy merchandise they will by force of habit continue, regardless of who owns the business. But on the other hand the practice of a profession requires skill and a reputation, and when one has acquired clients or patients the location of the office has title to do with the loss of such patients. There may be much in this argument, but these questions are for the jury's consideration upon relevant testimony.

The court instructed the jury to "allow him (the plaintiff) such damages and only such damages as would reasonably compensate him for the loss sustained," and further instructed the jury that they should consider the injury done to his office equipment and fixtures and the length of time he was out of the use of same and the extent of loss in professional income due directly to his eviction; but he failed to state the true basis of the measure of damages, and that is that he should recover the value of the unexpired term less the rent reserved, and in arriving at this value they should take into consideration the loss of professional income and injury to his office equipment and fixtures.

"The jury should have such guidance from the court, in the form of instructions on the law of damages applicable to the facts shown as will enable them to understand and act upon the evidence. And the instructions should state the law in sufficient detail. and not, by too general a charge, give the jury a 'roving commission' to find such damages as they please. If no assistance is given to the jury by the court, the verdict cannot be upheld." 4 Sedgwick on Damages (9 Ed.), section 1320; Citizens' Street Railway Co. v. Burke, 98 Tenn., 650, 40 S. W., 1085.

Hence this assignment of error should be sustained.

8. We are of the opinion that the eighth assignment, which complains that the court erred in submitting to the jury the question of allowing the plaintiff punitive damages, should be sustained under the proof adduced.

"Where suit is brought for a trespass committed while the defendant was acting in good faith, and under an honest belief that he had a legal right to do the act complained of, the plaintiff is entitled to recover only the actual damages sustained by him, and not damages of a punitory or exemplary character." Allison v. Chandler, 11 Mich., 542; Herzog v. Texas Co., 88 Mont., 580, 294 P., 962.

Whether there is any evidence to justify the assessment of exemplary damages is a question for the court, and if there is none, it is error to submit the question of exemplary damages to the jury. 1 Sedgwick on Damages (9 Ed.), section 387.

"The doctrine, that in cases where the elements of fraud, malice, or gross negligence, or oppression, enter into the injury, the interest of society and the aggrieved party are blended and the jury in such cases may award exemplary damages, has been too long enforced in our lower courts, and too often construed by this court, to be now disturbed." Cox v. Crumley, 5 Lea, 533; 36 C. J., 284, section 1034; 1 Sedgwick on Damages (9 Ed.), sections 363, 363a, 365.

"The justification of exemplary damages lies in circumstances of aggravation; and the allowance of such damages is therefore restricted to such cases. There must usually be some wrong motive accompanying the wrongful act, and in the absence of malice or some other circumstance of aggravation exemplary damages cannot be recovered in any form of action." 1 Sedgwick on Damages (9 Ed.), section 363.

It is insisted that the defendant relied strictly upon the advice of counsel and the advice of counsel was a bar to the recovery of exemplary damages. We do not think that the defendant can rely upon the advice of counsel in this case further than as an evidence of good faith. The advice of counsel in this case certainly was not a bar to the recovery of exemplary damages for the reason that it was not shown that the advice was based upon a knowledge of all the facts of the case and upon a full statement of the facts to its counsel. In fact, the evidence shows that the defendant did not pursue the proper inquiry to ascertain the facts and claims not to have known that the plaintiff had a lease from year to year. The defendant is not liable for exemplary damages, provided he acted in good faith and acquainted his counsel with all the facts in the case, and then exactly followed the advice. 1 Sedgwick on Damages (9 Ed.), section 383b; 8 R. C. L., 553, section 103. However, on remand the plaintiff will not be precluded from again suing for and recovering exemplary damages should the evidence on a new trial warrant a recovery, under the rules stated in this case.

9. The assignments as to the first eight special requests refused by the court are overruled, for the reason that each assignment is

predicated upon the assumption that the lease contract was from month to month instead of from year to year, and had the court charged them it would have resulted in the court's having taken the case from the jury.

We think that the ninth request was properly refused, because there was some evidence of the value of the gold filings.

We think the court properly refused to charge the tenth special request, as there was proof of loss of professional income, and the request as worded should not have been given.

10. As the case must be reversed and remanded for a new trial, we deem it not proper to express any opinion as to the excessiveness of the verdict.

It is insisted that the plaintiff cannot maintain an action for damages, as he should have pursued his remedy of forcible entry and detainer as provided by statute. We think there is nothing in this contention. Where the lessor takes possession of the leased premises before the expiration of the term and evicts the tenant, it is clearly a trespass and the tenant is entitled to his action for damages. 36 C. J., 274, section 1008; Jones on Landlord & Tenant, section 560; Brown v. Kite, 2 Overt., 233; Henly v. Neal, 2 Humph., 551.

"The judgment in a case of forcible entry and detainer shall be no bar to an action against the defendant for trespass." Shannon's Code, section 5122, New Code, section 9277.

The case of Brown v. Kite, supra, was decided before the forcible entry and detainer statute was passed, and the case of Henly v. Neal, supra, was decided after it was passed, which shows that the action of trespass was recognized as a remedy of the tenant, and the statute on forcible entry and detainer did not affect that remedy, as expressly stated in Shannon's Code, section 5122. However, now, by Code, section 8564, all injuries to property may be redressed by an action on the facts of the case.

Several of the assignments of error having been sustained, it results that the judgment must be reversed and the cause remanded to the circuit court of Davidson county for retrial on the question of the amount of damages only. Where it was shown that the plaintiff was entitled to damages, but there was no evidence from which the jury could properly find the amount of damages, the case should be remanded for a new trial on the question of the amount of damages alone. Jones v. Tenn. Central R. R. Co., 8 Tenn. App., 183; Nashville v. Mason, 11 Tenn. App., 344, and cases therein cited. It was held in these cases that on review the court may, in its discretion, qualify the order of remand so as to restrict the scope of the new trial ordered, and may, in proper cases, limit the retrial in the court below to the single question of the ascertainment of proper damages.

230

The cost of the appeal is adjudged against Dr. Walton and the sureties on his prosecution bond. The cost that accrued in the trial court will await the final determination of the case.

Faw, P. J., and DeWitt, J., concur.