**IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE**

FILED

March 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| **MEESE & ASSOCIATES, INC.,** | ) |
| | ) |
| Plaintiff/Appellant, | ) Campbell Chancery No. 14,073 |
| | ) |
| VS. | ) Appeal No. 03A01-9705-CH-00197 |
| | ) |
| **EDDIE POWERS and DAVID HICKS,** | ) |
| | ) |
| Defendants/Appellees. | ) |
| | ) |
| **REBECCA CAR KIRKLIN,** | ) |
| | ) |
| Intervening Plaintiff/ | ) |
| Appellee, | ) |
| **vs.** | ) |
| | ) |
| **MEESE & ASSOCIATES, INC.,** | ) |
| | ) |
| Defendant/Appellant. | ) |

APPEAL FROM THE CHANCERY COURT OF CAMPBELL COUNTY
AT JACKSBORO, TENNESSEE
THE HONORABLE BILLY JOE WHITE, CHANCELLOR

**A. THOMAS MONCERET**
Knoxville, Tennessee
Attorney for Appellant

**TERRY M. BASISTA**
**BASISTA, PRYOR & BALLOFF**
Jacksboro, Tennessee
Attorney for Appellees, Eddie Powers and David Hicks
and Intervening Appellee, Rebecca Carr Kirklin

**REVERSED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**WILLIAM H. WILLIAMS, Sr. J.___**

Plaintiff, Meese & Associates, Inc. ("plaintiff"), appeals the judgment of the trial court

awarding Intervening Plaintiff/Appellee, Rebecca Kirklin ("Kirklin"), the real estate commission for the sale of Defendants/Appellees', Eddie Powers ("Powers") and David Hicks ("Hicks") (collectively "defendants"), property by Kirklin. For reasons stated hereinafter, we reverse the decision of the trial court and remand.

Defendants contracted with Kirklin of PM Realty for the sale of a piece of property improved with a single-family home in the Fincastle community in Campbell County, Tennessee. On November 14, 1994, defendants gave Kirklin exclusive authorization to sell this property. Kirklin's contract expired by its own terms on August 14, 1995. Kirklin's contract, however, contained an extension clause which provided:

> If the property is sold or exchanged by Owner, or by Broker or by any other person to any Purchaser to whom the property was shown by Broker or any representative of Broker within sixty (60) days after the expiration of the period of time mentioned above Owner agrees to pay to Broker a cash fee which shall be [six percent] of the purchase price . . .

Thereafter, on August 21, 1995, defendants entered into a sales agency contract with Meese to sell the same property. Present at the meeting were Meese, defendant Powers, Patricia Sitton ("Sitton"), and Kenneth Falls. The contract between the defendants and plaintiff gave plaintiff the exclusive and irrevocable right to sell the property but did not become effective until August 24, 1995. This delay in time between execution of the contract and the effective date was to allow plaintiff sufficient time to learn the identities of potential buyers (also call "hot prospects") from Kirklin so as to exclude such persons on the exclusion list within the contract. This contract also provided for compensation to plaintiff in the event the property was sold by any person other than the plaintiff. Specifically, the contract provided in pertinent part:

> 2. COMPENSATION TO AGENT. I hereby agree to compensate Agent, if during the term hereof or any extension thereof, the property is sold by Agent or any other person, or, if a sales agreement is obtained for the property by Agent or any other person with a buyer who is willing and able to purchase the property upon the price and terms herein set forth or any other price and terms [owner] may accept, or, if the property is withdrawn from sale, transferred, conveyed, leased without consent of Agent or made unmarketable by [owner's] voluntary act.

The contract signed by defendants granting plaintiff the exclusive right to sell their property

2

was a standard form contract used by real estate professionals. The defendants took adequate time to review the contract.

When defendants signed the contract making plaintiff their exclusive agent concerning the sale of the property, defendant Powers indicated to Linda Meese ("Meese"), as an agent for plaintiff, that this property had been previously listed by another broker. Meese inquired as to the identities of any potential buyers existing under the former contract with Kirklin. Plaintiff routinely excludes potential buyers who have dealt with another broker upon learning the identities of those persons. This is accomplished by allowing space within the contract in which to write a list of potential buyers in order to exclude the possibility of commission by plaintiff's agents if the property is sold to any of the people enumerated on the list. There is some dispute as to whose responsibility it was to gather the names of the potential buyers to be excluded from the contract between plaintiff and defendants. Meese contends that defendant Powers told her that he did not know the names of any potential buyers but would find out the identities of the individuals and apprise her of them at a later date. Defendant Powers testified that Meese told him that she would get the list of potential buyers from Kirklin. Kirklin testified twice, however, that defendant Powers had told her that he would take care of providing Meese with the lists of potential buyers.

On August 24, 1995, without any entries placed in the exclusion provisions of the plaintiff's contract with defendants, defendant Powers told Meese and Sitton to "go ahead and sell the property." Upon plaintiff's request, plaintiff began running television ads and placing signs upon the property. Thereafter, however, the property was sold by Kirklin on August 25, 1995. A closing was had and the monies from the real estate commission were placed in escrow with Peoples National Bank of Lafollette pending the resolution of this dispute between the brokers.

At trial, the court awarded Kirklin the commission monies in escrow. The trial court stated:

3

But Meese knew on August 21st that there was an expired contract with a holdover provision and hot prospects. They held up this contract for beginning execution of their contract until August 24th when they testified they received the call from Mr. Powers telling them to go ahead with the advertising. They put it in their computer and put it on the television for advertising. On the 25th, the very next day, a contract of sale was signed by Kirklin with the hot prospect. In my opinion, there is no question but as to the stake that Kirklin is entitled to the real estate fee. She is in no way in violation of any contract or agreement. She had a contract with a holdover provision. They are in all real estate contracts, and they are generally held to be enforceable. All the parties of these contracts knew about the holdover provision, and they all knew about the hot prospect. The only dispute between the parties really that has bothered me is that assuming that Mr. Powers should have contacted the real estate company or provided to them the names before the 25th and didn't, I look to ascertain damages and would have granted the cost of the television add [sic] and one of the costs of the two multiple listing service expenses and nominal travel expenses. The pleadings would not justify that. Doing that would be going outside the pleadings in my opinion. The Court cannot do it. But I think that's the equitable solution to this matter; that Mrs. Kirklin was perfectly in her rights to sell this property and collect the fees.

The sole issue on appeal is whether the trial court erred by denying plaintiff's right to a real estate sales commission under plaintiff's exclusive contract with appellee.

The contract between plaintiff and defendants does not describe any agreement to exempt a sale to any particular buyer from the commission to which plaintiff would be entitled. The contract also recites that defendants read and understood it. Defendant Powers signed this contract, an act which the reader of the contract would naturally perceive as the manifestation of his assent to the terms contained therein. Consequently, upon learning of the sale to the ultimate buyers on August 25, 1995, anyone relying exclusively on the written provisions of the contract would believe that plaintiff's agent was entitled to a commission.

Indeed, the fact that defendant Powers signed this version of the agreement creates a rebuttable presumption, pursuant to Tenn. Code Ann. § 47-50-112, that the document accurately reflects the complete and final agreement of the parties. The statute provides in pertinent part:

4

Contracts to be enforced as written.--(a) All contracts, including, but not limited to, notes, security agreements, deeds of trust, and installment sales contracts, in writing and signed by the party to be bound, including endorsements thereon, shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written; provided, however, nothing herein shall limit the right of any party to contest the agreement on the basis it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

Tenn. Code Ann. § 47-50-112(a)(1995).

The statute provides that the presumption accompanying a signed written contract does not preclude consideration of extraneous proof that the signature of the person to be charged was "procured by fraud." The statute also preserves the right to assert any other defenses to the enforcement of the contract which are provided by either the common law or statute.

In the answer to the complaint, the defendants did not assert the defenses of fraud or mistake, but instead chose to assert the affirmative defenses of equitable estoppel and waiver. Rule 8 of the Tennessee Rules of Civil Procedure requires that "a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . estoppel . . . waiver." In their answer, defendants' plead estoppel and waiver which read as follows:

Your Defendants aver affirmatively that the contract entered into with Meese and Associates, Inc. was entered into with the full knowledge of all of the parties that the Meese Contract would be subject to the potential sale of the property by Rebecca Carr Kirklin who was in fact the agent who procured the sale for Defendants. . . [t]he Defendants further assert the defense of estoppel, waiver, and breach of contract and agreement as further defenses to the Complaint.

In this case, we deem defendants' defense of waiver to be one of implied waiver. The elements of implied waiver and equitable estoppel are one and the same.

The essential elements are set out in *Callahan v. Town of Middleton*, 41 Tenn.App. 21, 292 S.W.2d 501 (1954):

The essential elements of an equitable estoppel as related to

5

> the party estopped are said to be (1) Conduct which amounts
> to a false representation or concealment of material facts, or
> at least, which is calculated to convey the impression that the
> facts are otherwise than, and inconsistent with, those which
> the party subsequently attempts to assert; (2) Intention, or at
> least expectation that such conduct shall be acted upon by the
> other party; and (3) Knowledge, actual or constructive, of the
> real facts.  As related to the party claiming estoppel they are:
> (1) lack of knowledge and of the means of knowledge of the
> truth as to the facts in question; (2) reliance upon the conduct
> of the party estopped; and (3) action based thereon of such a
> character as to change his position prejudicially.

*Callahan v. Town of Middleton*, 41 Tenn.App. 21, 292 S.W.2d 501 (1954)*; See Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990).

Estoppel is not favored and it is the burden of the party seeking to invoke the doctrine to prove each and every element thereof.  *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991); *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn. Ct. App. 1986).

Furthermore, for estoppel to arise, the act complained of must have been done with knowledge that it would be relied upon and the other party has to have acted in reliance without either knowledge of the true state of affairs or the means of learning the true state of affairs.  *City of Lebanon v. Baird*, 756 S.W.2d 236, 244 (Tenn. 1988).

In the case under submission, we are of the opinion that defendants have failed to carry the burden imposed upon them to invoke either the doctrines of equitable estoppel or implied waiver.  There is no proof that plaintiff's agents made a false representation as to a past or present fact or concealed material facts from defendant.  Defendants state that plaintiff entered into their contract with defendants with full knowledge of all the parties that plaintiff's contract would be subject to the potential sale of the property by Kirklin.  Specifically, defendants claim that Meese represented that Kirklin would be compensated if she sold the property.

> Q.  And all of that was done in the context of Mr. Powers
> having told you that Mrs. Kirklin had some hot prospects and
> it was clear to you that he understood that if she sold to one of
> those prospects, she would get commission?

6

A. I didn't have a problem with that.

Q. Was it not clear to you in the context of what you said earlier that Mr. Powers understood and believed that if this property was sold by Mrs. Kirklin to one of these hot prospects that he told you she had, that she would get the commission?

A. He asked me, if she brings in a buyer, whether it was a hot prospect -- if she brings in a buyer, is she going to get paid a commission, and I said -- well, I work with all licensed real estate agents and compensate all sales agents, and I said sure.

Defendants contend that this is illustrative of the fact that plaintiff understood that its contract was subject to a sale by Kirklin to a potential buyer. Consequently, defendants contend that plaintiff is estopped from now claiming that it should get a commission from Kirklin's sale and has waived any reliance upon the failure of defendant Powers to have specific names for consideration, either by means of plaintiff's failure to actively facilitate this effort to acquire the names of potential buyers or by means of their negligent indifference thereto. We cannot agree with this reasoning.

The above statements by Meese were made in the context of a contract which stated that plaintiff was to receive commission for a sale of the property if sold by an agent of plaintiff or any other person and that included a listing space for "hot prospects" to be excluded from the contract. It is undisputed that plaintiff had no problem allowing Kirklin to obtain the commission for a sale to a "hot prospect" enumerated within the list of exclusions. Additionally, plaintiff testified that even if Kirklin sold the property, she would be "compensated" with .024 percent of the sales price of the property as she does all licensed real estate agents who sell one of her properties. In context, we find that these representations were not false and no facts were concealed from defendants.

Furthermore, defendants have failed to carry their burden in respect to proving that they had a lack of knowledge or the means of knowledge of the truth as to the facts in question. The pivotal fact in question is whose responsibility it was to procure the names of potential buyers in order to place these names within the commission exclusion provision in plaintiff's contract with defendants.

7

We note that if defendants had obtained the names of potential buyers from Kirklin, defendants could have made sure that such names were included in the commission exclusion provision of the contract. Knowledge of the identities of "hot prospects" was equally available to defendants as to plaintiff and its agents. As mentioned above, defendants contend that Meese took upon herself the responsibility of acquiring the names of "hot prospects" from Kirklin. However, the great weight of the testimony preponderates otherwise. The ultimate buyers of the property signed a disclosure statement of August 16, 1995, stating that they were aware that Kirklin was representing the seller. Kirklin was aware that plaintiff had a contract with defendants on August 21, 1995. When asked why she never advised plaintiff of the identities of these potential and ultimate buyers of the property, Kirklin stated that defendant Powers said that "he had done that." In fact, Kirklin testified that she had given defendant Powers the names of two couples whom she considered "hot prospects" and that there was no reason why defendants could not relay that information to plaintiff. Kirklin went on to testify that she was called one night by plaintiff's agent, Sitton. Specifically, she testified:

> A. My husband shared with me that I received a call from Ms. Sitton. And I got home late that evening. So when I got in that evening, I called Mr. Powers to tell him. And I told him that she had called and did I need to call and give that person those lists of names, and he said no, that he had taken care of that.

The lists of names that defendant Powers claims "he had taken care of" is what is fatally absent from the commission exclusion provision in the contract.

As mentioned above, the trial court stated that plaintiff was aware of the holdover provision and was told that there were "hot prospects," and, as a result was not allowed to collect the commission on the contract. After a review of the record, we find that there is no evidence that plaintiff was aware of a holdover provision in the particular contract defendants maintained with Kirklin. Plaintiff may well have been aware that holdover provisions were common in real estate contracts, but evidence concerning their knowledge of a holdover provision in this particular contract is scant at best. In fact, plaintiff's agents never saw defendants contract with Kirklin and interpreted defendant Powers' statement that his contract with Kirklin had expired to mean that the contract, in its entirety, had

8

lapsed.

Furthermore, the fact that plaintiff was aware of the existence of "hot prospects" does not in and of itself deny them a commission under the terms of their contract with defendants. In fact, it is uncontroverted that plaintiff's contract allowed for such "hot prospects" to be listed in order to exclude plaintiff's agents from receiving a commission in the event of a sale to one of these "hot prospects" by Kirklin. As mentioned *supra*, defendants contend that plaintiff's agents were supposed to acquire the identities of these "hot prospects" from Kirklin; however, the evidence preponderates otherwise.

The defendants did not assert fraud or mistake in their complaint, and as mentioned above, defendants have failed to carry their burden in proving waiver and equitable estoppel. As such, we have two contracts for the sale of real property in Campbell County, Tennessee. Defendants were afforded sufficient opportunity in which they could choose to advise the plaintiff and its agents of "hot prospects" already dealing with Kirklin. Kirklin testified twice that defendant Powers had told her that he had assumed the responsibility to supply plaintiff with the identities of these "hot prospects." Defendants' failure to identify the "hot prospects" prompted the execution and effective date of the real estate contract with plaintiff without the listing of any exclusions. Because of the absence of such exclusions and because of the failure of defendants to set forth any valid defenses, the intentions of the parties must be limited those intentions manifested within the four corners of the writing itself. It is well settled in Tennessee that "a court is not at liberty to make a new contract for parties who have spoken for themselves." *Smithart v. John Hancock Mut. Life Ins. Co.*, 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063 (Tenn. 1934); *See also Stone v. Martin*, 185 Tenn. 369, 374, 206 S.W.2d 388, 390 (Tenn. 1947). "Parties to a contract are free to allocate risks and burdens between themselves as they see fit." *Brown Bros., Inc. V. Metro Gov. Of Nashville and Davidson County*, 877 S.W.2d 745, 749 (Tenn. Ct. App. 1993). In *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992), this Court stated that "courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them."

9

We conclude that the evidence preponderates against the findings of the trial court. We find that the trial court erred in refusing to award a commission to plaintiff. The evidence of implied waiver and equitable estoppel is meager, and the result, however undesirable, is one where defendants have created for themselves liability on both their contract with Kirklin and their contract with plaintiff.

In light of the foregoing, we reverse the judgment of the trial court. This case is remanded for proceedings necessary and consistent with this opinion. Costs of this appeal are taxed to defendants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
WILLIAMS, Sr. J.