FRIERSON v. GANT et al.—134 S. W. (2d), 193.

Middle Section.   July 5, 1939.

Petition for Certiorari denied by Supreme Court, December 16, 1939.

Frierson & Queener, of Columbia, for appellants.

Robert K. Woody and Hopkins & Hopkins, all of Columbia, for appellee.

FELTS, J.   This is a controversy whether Harry W. Frierson has a valid lease upon a certain building in Columbia, Tennessee, occupied by him as a shoe store. The Chancellor held he has such a lease, and the owners of the premises, John N. Gant and Mrs. Lena Frierson Avent, appealed.

Frierson was in the property under a lease which began May 1, 1933, and expired December 31, 1937.   The rental was $100 per month.   The lease, which was in writing, stipulated:

". . . the Lessors agree that the Lessee shall have the refusal to lease said property at the end of this period, that is to say they will not lease the property to any one else without first notifying the Lessee and giving him the refusal to take a lease on it at the price and upon the terms to be agreed upon by the Lessors."

In October, 1937, Frierson and Gant had some conversations looking to a renewal of the lease.   Whether they reached an agreement is a matter of dispute; but at any rate they did not make any written agreement.

Frierson claims that Gant, acting for himself and as agent for Mrs. Avent, made an oral offer on October 16 to lease the building to him for five years at $125 per month, and that he accepted this offer by letter of October 23, in part as follows:

"After carefully considering the matter I have decided to accept your proposition of $125 per month, and will make a contract with you for a period of five years from January 1, 1938.   And this letter is to confirm my acceptance.

"Bring the contract by the store and I will sign it.   Our old lease contract, with the exception of the dates of the beginning and the termination of the lease, will be acceptable to me."

A day or two later Frierson saw Gant and told him he had accepted the offer; but Gant stated he had leased to some one else and would expect Frierson to give up possession December 31, 1937.

Frierson then had a lease written according to the terms of the offer, signed it, and had his solicitors send it to Gant and Mrs. Avent for their signatures.   His solicitors in their letter of October 28, enclosing this lease, said:

"In event the lease enclosed is not signed and returned to either Mr. Frierson or the writers we shall proceed on November 5, 1937, by bill in the Chancery Court for Maury County, Tennessee, to protect the interests of Mr. Frierson."

Neither Gant nor Mrs. Avent signed the lease or replied to this letter; and on November 5, 1937, Frierson filed the bill alleging the facts above stated as constituting a renewal or extension of the lease for a term of five years at a rental of $125 per month, and praying that "the rights of complainant under the original lease contract and the rights under the acceptance of the new contract be adjudged by decree of the Honorable Court;" and that "said agreement and rights be specifically performed."

Gant and Mrs. Avent demurred upon the grounds that the stipulation in the lease contract relied on in the bill was not a covenant to renew or extend the lease, because it was void for uncertainty and was insufficient to comply with the statute of frauds or to support a suit for specific performance; and that the new lease contract alleged in the bill was unenforceable by reason of the statute of frauds, since it was for a lease of land for a longer term than one year and was not signed by demurrants or by any one authorized to bind them.

Without waiving their demurrer, they filed an answer and a supplemental answer. They denied that Gant had made an oral offer or that there was any agreement by them with complainant to renew or extend the lease, as alleged in the bill. They averred that, under the stipulation giving Frierson the refusal of a lease "at the price and upon the terms to be agreed upon by the Lessors," they had a right to offer him a lease at such price and upon such terms as were agreeable or satisfactory to themselves; and they tendered him a lease at $150 per month from January 1, 1938 to December 31, 1938. And they asked that their answer be treated as a cross-bill and that the court decree that Frierson either accept or reject this lease on or before December 31, 1937, and, if he rejected it, that the possession of the premises be restored to them on January 1, 1938.

Frierson answered the cross-bill by a general denial of all its allegations which were inconsistent with those of the original bill.

The Chancellor overruled the demurrer, with leave to rely thereon at the final hearing; and on January 24, 1938, he entered an order reciting the parties had agreed Frierson should pay Gant $125 per month "pending this lawsuit without prejudice to the rights of any of the parties," and directing him to do this.

Frierson took the depositions of himself and his clerk, Carl Pinkston, to prove Gant made an oral offer to lease him the store for five years at $125 per month; and Gant gave his deposition denying he had made such an offer. He stated that he told Frierson he would have to get $125 or more per month for the premises after December 31, 1937, and Frierson said he would give $110 per month

but no more; and that this ended the negotiations and he felt free to rent the property to some one else, and he did rent it to Lester H. Smith. On cross-examination he stated he had "the copy of the old lease and made some changes" and he and Smith signed it. Called on to produce this as "exhibit No. 1" to his deposition, he did so. This original exhibit is sent up, and it appears to be a copy of the original lease with the name, "Harry W. Frierson, doing business under the name of Frierson's Spot Shoe Store," marked out and "Lester H. Smith, doing business under the name of Smith's Brown Built Shoe Store," inserted with a pen; and the lease begins "on the 1st day of January 1938 and ends December 31, 1940;" The rental was $125 per month; and the lease was signed by Smith and Gant.

Upon the final hearing November 1, 1938, the Chancellor overruled the demurrer, and found that Gant, acting for himself and as agent for Mrs. Avent, made the oral offer and Frierson accepted it by letter, as alleged in the bill. He also found:

"And it further appears to the satisfaction of the Court from the exhibit lease contract filed as an exhibit to the deposition of the defendant, John N. Gant, that said John N. Gant had prepared a lease contract to be executed by Harry W. Frierson and the defendants, John N. Gant and Mrs. Lena Frierson Avent, covering a period of five years as insisted by complainant for a consideration of hundred twenty five dollars ($125) per month and as further insisted by the complainant, identical with the original contract heretofore filed and that John N. Gant signed said exhibit lease contract."

And the court found and decreed that, "under authority of the third paragraph of said original lease contract" (the stipulation above quoted), the complainant and defendants on October 23, 1937 "entered into a renewal and/or extension lease contract" for "a period of five years covering a term from January 1, 1938 to December 31, 1942, at a monthly rental of one hundred twenty-five dollars ($125)." And the court decreed that complainant should have quiet possession of the premises so long as he complied with his obligations under the lease contract.

Appellants insist that the stipulation, on which appellee relies and on which the Chancellor based his decree, is void for uncertainty and can lend no aid to appellee's claim. We think this is true. A lessee has no right to a renewal or an extension of a lease, in the absence of an agreement therefor; and such an agreement in order to be enforceable must possess the certainty required in other sorts of contracts. Of course such an agreement may itself expressly fix the terms of the new letting or by implication may make the terms of the old letting applicable to the new. But the stipulation here in question does neither. Where an agreement in a lease for an extension or renewal fixes all of the terms of such renewal or

extension except merely the amount of the rent, some cases hold that the court may fix the amount of rent it finds to be reasonable and enforce the agreement. Young v. Nelson, 121 Wash., 285, 209 P. 515, 30 A. L. R. 568; Edwards v. Tobin, 132 Or., 38, 284 P. 562, 68 A. L. R., 152. But these cases are opposed to the weight of authority. See the cases collated in the Annotations, 30 A. L. R. 572, 68 A. L. R. 157. In the first of these Annotations it is said: "A renewal covenant in a lease which leaves the renewal rental to be fixed by future agreement between the parties has been generally held unenforceable and void for uncertainty and indefiniteness," 30 A. L. R. 573.

But the stipulation now under consideration fixes none of the terms nor the rental, but says: "at the price and upon the terms to be agreed upon by the Lessors." The court cannot make a contract for the parties, and any attempt to give effect to this stipulation would be to make a contract for them rather than to enforce one they have made.

Tiffany on Landlord and Tenant, says, Vol. 2, section 220, p. 1521: "An 'option' in the lessee to renew on such terms as may be satisfactory to both parties is obviously nugatory, it giving him merely the right to enter into a new contract with the owner of the reversion, which right he would have had without any such provision" (citing cases). To the same effect, see Underhill on Landlord and Tenant, Vol. 2, Sec. 805, p. 1367; 16 R. C. L. 886; 35 C. J. Sec. 122, pp. 1008, 1009; Duffield v. Whitlock, 26 Wend., N. Y., 55; Reed v. Campbell, 43 N. J. Eq. 406, 4 A. 433; Howe v. Larkin, C. C., 119 F. 1005.

We think Southern Style Shops, Inc., v. Mann, 157 Tenn., 1, 4 S. W. (2d), 959, is in point here. In that case the lease provided that if the lessors should have a bona fide offer by another to rent the premises, they should first give the lessee "the right and option to meet said offer." It was held that this provision did not give the lessee "the right to renew, but only a right or opportunity to negotiate for a renewal."

So we think this stipulation cannot aid appellee's claim, but it must stand or fall on the later negotiations between the parties looking to a new letting. Appellants contend these negotiations fell short of an agreement, while appellee insists they resulted in an oral agreement for an extension or a renewal of the lease for five years at $125 per month. That is to say, appellants made an oral offer embodying these terms and appellee accepted it by letter. The Chancellor so found and we think the proof supports his finding, and that the fact that appellee asked appellants to sign a written lease did not show the parties had not already made a completed parol agreement. Neilson & Kittle Canning Co. v. F. G. Lowe & Co., 149 Tenn., 561, 260 S. W. 142.

This parol agreement, appellants insist, is unenforceable by reason of the statute of frauds. This defense was made by demurrer, which is proper where the bill shows, as this one does, that the agreement rested only in parol. Macey v. Childress, 2 Tenn., Ch. 438, 443; Lusky v. Keiser, 128 Tenn., 705, 164 S. W., 777, L. R. A., 1915C, 400. This statute, Code, section 7831 (4), provides that no action shall be brought upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year, unless such contract, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized. Here "the party to be charged" means the appellants. Lusky v. Keiser, supra. In order to make a contract enforceable against them under this statute there must be a writing evidencing the contract signed by them or some one authorized to bind them. Manifestly, an oral offer by them, even though accepted by appellee in writing, is not a writing signed by them or any one authorized to bind them; and such an offer and acceptance could constitute only a parol agreement, which is not good against their defense of the statute of frauds. However, if, as the Chancellor found, the paper Gant was required to exhibit in his deposition was a writing signed by him evidencing the terms of the previous parol agreement between appellee and appellants, this would satify the requirements of the statute so as to bind Gant. Huffine v. McCampbell, 149 Tenn., 47, 257 S. W., 80.

But appellants assign this finding as error, and we think the assignment well taken. This exhibit evidenced a contract with Smith and not with appellee. Gant says this and the original exhibit itself shows it. Appellee's name had been marked out and Smith's inserted when Gant and Smith signed this paper as constituting their contract. This erasure and interlineation, Gant says, was occasioned because they used "the copy of the old lease and made some changes" in making their contract. Appellee insists that the paper was originally prepared by Gant with the intention of making a written lease to appellee. If so, he did not carry out this intention, but abandoned it, struck out appellee's name, inserted Smith's, and made it evidence a contract not with appellee but with Smith. But if appellee's name could be substituted for Smith's in this paper, it would not then be evidence of the parol agreement relied on by appellee. That agreement was for a term of five years, from "January 1, 1938, to December 31, 1942," while that in this paper is for three years, "from the 1st day of January 1938" to "December 31, 1940."

For these reasons we think the decree of the Chancellor was erroneous, and it is reversed and the cause remanded for further proceedings not in consistent with this opinion to the end that the

rights of the parties may be adjusted, the appellee being liable to appellants for the reasonable value of the use of the premises since January 1, 1938, and they being liable to account to him for the monthly sums paid by him to them pursuant to the agreement of the parties pending this litigation. Appellee will pay the costs of the cause including the costs of this appeal.

Faw, P. J., and Crownover, J., concur.