# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 17, 2007 Session
March 23, 2009 Remand Order

## MIKE ELLIS  v. PAULINE S. SPROUSE RESIDUARY TRUST, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-51-05     Wheeler A. Rosenbalm, Circuit Judge**

---

**No. E2009-654-COA-RM-CV  - FILED JUNE 30, 2009**

---

This matter is before us on remand from the Tennessee Supreme Court for consideration of issues we pretermitted in our earlier opinion, which decision the High Court reversed.  In our earlier judgment, *Ellis v. Sprouse*, E2006-01771-COA-R3-CV, 2007 WL 3121666 (Tenn. Ct. App, E.S., filed October 26, 20007), we held that plaintiff Mike Ellis ("the Farmer") did not exercise his lease option on farmland owned by Kerry M. Sprouse[1] ("the Landlord") by actions taken after the lease expired.  As a result of that holding, we ruled that the portion of the judgment entered on a jury verdict awarding lost farming profits of $82,000 could not stand.  We further held that the punitive damage award of $30,000 had to be retried since – at the time of our decision – it was based solely upon a compensatory damages award of $534 for the Landlord's trespass – a trespass that was not contested on appeal.  In *Ellis v. Sprouse*, 280 S.W.3d. 806 (2009), the High Court held that the Farmer had indeed exercised his option to renew the lease by continuing to hold over and making his lease payments after the initial term had expired.  Accordingly, the Supreme Court reversed and remanded to this Court with "directions to consider and decide the issues that were pretermitted in [our] earlier opinion in this case."  We now have considered those issues, and, with respect to them, we affirm the judgment of the trial court.  In light of the Supreme Court's opinion and our opinion on remand, the trial court's judgment is affirmed *in toto*.

**On Remand from the Tennessee Supreme Court; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined.  SHARON G. LEE, SP. J., not participating.

W. Tyler Chastain and Margo J. Maxwell, Knoxville, Tennessee, for the appellants, Pauline S. Sprouse Residuary Trust and Kerry M. Sprouse.

---

[1]Kerry M. Sprouse is the trustee of the Pauline S. Sprouse Residuary Trust which is the actual owner of the property.  Since he is a named party and the principal actor, we will refer to him as the Landlord for simplicity.

G. Wendell Thomas, Jr., Rob Quillin, Catherine E. Shuck, and Kevin C. Stevens, Knoxville, Tennessee, for the appellee, Mike Ellis.

**OPINION**

I.

The necessary procedural history of this case is set forth in the foregoing orientation paragraph and the opinions referenced in that paragraph. We will now state the facts that are necessary for our review on remand.

The Landlord purchased the subject property in 2004. At the time of the purchase, the Farmer had a lease on the property from the Landlord's predecessor with some 60 acres of the 103 leased acreage planted in corn. The Landlord, who is involved in real estate, with "vast amounts of experience in multi-millions of dollars worth of sales and development" proceeded, after purchasing the property, to drive directly across the Farmer's young cornfield in an automobile. The Farmer and the Landlord later spoke about the damage. The Landlord told the Farmer that the latter could harvest what was left of his present crop but that he could not farm the property after that. The Landlord told the Farmer that if he caused trouble, the Landlord would plow under his then-existing crop. The Farmer vacated the premises and filed suit.

The Farmer had leased the subject property in 1997 from a Mary Bagwell under a short written lease obviously prepared by a layperson. Both parties signed the lease. The initial term of five years expired December 31, 2001, but the Farmer had the option of an additional five-year term. By the time of Ellis's purchase, as held by the Supreme Court, the Farmer had exercised the option.

Every year from 1997 through 2004 the Farmer planted about 60 acres, the tillable portion of the property, in some kind of crop. He had raised corn, wheat, soybeans, and straw on the property. The subject property constituted only a portion of the Farmer's operation. Typically, he worked some combination of approximately 1000 acres. The core of the operation was dairy, with some crops going to feed the cows and some grown as cash crops. The Farmer had been recognized as Knox County's Farmer of the Year several times. He was once Tennessee's Young Farmer and selected as national runner up by one trade association. The Farmer has been in and around the farming business since his childhood, and had operated his own farm for about 30 years. The Farmer is under constant pressure to expand his operations and there is a lack of tillable land available.

As a result of the Farmer's "forced" removal from the land, he lost the value of crops he would have grown in 2005 and 2006. Based on the Farmer's overall experience in farming, and with particular reference to the subject property, he opined that he would have planted approximately 60 acres in corn for silage in 2005, at a cost of $250 per acre, with a production of 30 tons per acre and a net value of $650 per acre. The value of the lost crop would have been $39,000. Offset against this is the $3,000 lease payment that he did not expend as a result of the Landlord's wrongful conduct. The Farmer would have rotated the crop in 2006 and planted wheat and soybeans. The net value of his wheat grain, wheat straw, and soybeans in 2006, after subtracting the production costs of $240 per acre, would have been $49,000, again minus the $3,000 lease payment saved. This was

the Farmer's testimony on direct-examination with respect to his damages, plus the damage caused by the Landlord's unlawful conduct in driving across the field.

The Landlord's counsel took the Farmer's projections to task on cross-examination. At times the Farmer admitted that the figures he gave on direct-examination for yields and costs and sale prices came from outside sources. Still, the Farmer often interjected or testified on redirect that the damage figures were his based on experience and that he used the outside sources to corroborate his own figures. Some examples follow:

> Yes, those are my figures, yes.

> \* \* \*

> Yes, it is on my personal knowledge of knowing what it cost to grow a crop of corn and silage and what it is worth. . . . Yes. But my personal knowledge - I was just giving you evidence other than my personal knowledge. My personal knowledge is . . . something that's a given.

> \* \* \*

> I know what corn silage we yield.

> \* \* \*

> I know what it costs to - what corn silage costs to produce and what it's worth, yes, I know that. I was not relying entirely on the farm service agency or co-op or that flyer.

> \* \* \*

> I considered the fertilizer, seed corn, chemicals, insecticide, cost of planting, cost of harvesting. . . . I buy fertilizer to grow corn. . . . I used what I had used previously, in previous years, as the amount of fertilizer it took for that farm. . . . I went by the soil test that I had done in 2004 as to what amount of fertilizer it would take to grow corn, and I calculated it from the cost of the fertilizer, cost of seed corn.

> \* \* \*

> Q: Independent of what Mr. Austin did, have you done you own calculations?

-3-

A: Yes, I have. And Mr. Austin didn't calculate the value of it. He calculated the amount of it with me that day. I calculated the value myself. . . . I was with him and was there and measured the quantity of it. I calculated the value of it per bushel, how many bushels there were and what the value of it was.

The Farmer admitted under cross-examination that he had never tracked his profits on this particular tract independent of his other parcels. Also, he acknowledged that his income tax returns for his combined operations showed a net income of $19,000 for 2002 and $16,353 for 2004. His gross income from farming in 2004, however, was $377,955. The Landlord did not call a witness to counter the Farmer's proof on damages.

The jury returned a verdict for the exact amount the Farmer projected as his losses, including the $534 for the tire tracks made by the Landlord in driving across the young corn patch. The jury also determined that punitive damages should be awarded.

The Farmer's additional proof on punitive damages consisted entirely of his own testimony that the Landlord had taken no actions to remedy his wrongdoing and that Tenant had incurred $17,000 attorney fees. The jury awarded $30,000 punitive damages.

## II.

The issues we have been directed to consider on remand, as framed by the Supreme Court, are as follows:

> Mr. Sprouse's assertions that the statute of frauds required the preparation of a new lease, that Mr. Ellis failed to present sufficient evidence to support his claim for lost profits, or that Mr. Ellis failed to present sufficient evidence to support his claim for punitive damages.

*Ellis*, 280 S.W.3d at 815. The Landlord's brief on appeal also calls into question the trial court's denial of a motion to alter or amend the judgment. We will address the issues in the order stated.

## III.

When reviewing denial of a directed verdict, this court must take the strongest legitimate view of the evidence in favor of the opponent of the motion, including all reasonable inferences. *Kim v. Boucher*, 55 S.W.3d 551, 556 (Tenn. Ct. App. 2001). The weight and credibility of testimony are for the jury, and we do not disturb those determinations provided there is material evidence to support them. *Id.* Conclusions of law, such as whether the statute of frauds is violated, are reviewed de novo without any presumption of correctness. *See Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. App. 2001). We review a trial court's denial of a motion to alter or amend the

-4-

judgment for abuse of discretion. ***Robinson v. Currey***, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004).

IV.

A.

We begin with the Landlord's argument that the statute of frauds required preparation of a new lease. The argument seems to have lost most of its vigor with the Supreme Court's holding that the option contained in the lease was exercised. That lease is in writing signed by the Landlord's predecessor, the party to be bound. The Landlord's reliance on ***Frierson v. Gant***, 134 S.W.2d 193, 196 (Tenn. Ct. App. 1939) is misplaced. ***Frierson*** involved an oral offer to renew exercised in writing, but not signed by the party to be bound. The Farmer has pointed us to ***Womble v. Walker***, 181 S.W.2d 5 (Tenn. 1944) as authority that a second writing is not necessary. "[W]here a lease gives a lessee a renewal at his election, and he elects to continue, a present demise is created, which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease shall be executed." ***Id***. at 8. We agree with the quoted language in the context of the facts before us. The Farmer's exercise of the option created a tenancy of five years subject to all the terms and conditions of the first term. There is no merit in the Landlord's attempt to invoke the statute of frauds.

B.

We next consider the Landlord's argument that the Farmer's damage claim for loss of his intended 2005 and 2006 crops should not have gone to the jury. The Landlord argues that the proof was defective because, according to him, the Farmer's costs figures and sales figures and similar projections were based solely on statements made to the Farmer by out-of-court declarants, and were therefore hearsay. We note the Landlord does not argue that the trial court erroneously admitted bits and pieces of hearsay. The trial court dealt with numerous hearsay objections and none of those rulings are challenged. Essentially, the Landlord argues that the Farmer admitted on cross-examination that he did not have personal knowledge of the substance of his testimony, therefore, a verdict based on that testimony cannot stand. We disagree with the Landlord's assessment. The trial court's ruling on the same argument is informative:

> In the course of the trial, the Court did [express] some concern about Mr. Ellis' reference to some hearsay sources for information about his claim for lost profits. However, the Court notes that that was elicited on cross-examination, and after having looked at his testimony in its totality, the Court's constrained to conclude that Mr. Ellis gave some opinions on direct examination about the profits that he claimed that he had lost from the inability to use such property. And he stated that the - in essence, those opinions were derived from his experience as a farmer and his experience in growing crops on this and other land, and the opinions that he rendered, based upon his own experience,

appeared to be certainly the kind of lay opinions[2] that a lay person engaged in farming would be entitled to render.

It's true that he on cross-examination referred to some hearsay sources, and the Court recalls, at least at one point, that he pointed out the distinction that he was simply relying upon that information to corroborate or to confirm the soundness of his original thinking and opinions about these matters.

We are in agreement with the trial court. With a skillful cross-examination, the Landlord's counsel was able to create some inconsistencies in the Farmer's testimony as to the source of his information. The Farmer's credibility, and the weighing of his testimony, were questions for the jury, and the jury obviously found him credible. It awarded as compensatory damages the exact sum that the Farmer estimated as his loss. This Court has held that "[u]ncertain and speculative damages are prohibited only when the existence of damage is uncertain, not when the amount is uncertain. When there is substantial evidence in the record and reasonable inferences may be drawn from that evidence mathematical certainty is not required." *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 28 (Tenn. Ct. App 2005)(*quoting* **Cummins v. Brodie**, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). This Court has previously affirmed a farmer's testimony of what he would have grown and the net income he would have generated from his crop as competent proof of damages for breach of a farming lease. **Fuqua v. Madewell**, 153 S.W.2d 133, 134 (Tenn. Ct. App. 1941). The Landlord had a hand in creating any uncertainty in the amount of damages by preventing the Farmer from continuing and should not be placed at an advantage because of that uncertainty. We hold that the trial court did not err in submitting the Farmer's proof of damages to the jury.

C.

The Landlord contends that there was insufficient evidence to allow the claim for punitive damages to reach the jury. The Landlord's argument is based on the idea that the Farmer did not prove any damages, or , at most, nominal damages of $534 that the Landlord offered to pay. We concluded in our earlier opinion that $534 in damages for what the jury could have found to be an intentional trespass were alone enough for a retrial on punitive damages, but disproportionate to a punitive award of $30,000. Since we have now concluded that the Farmer proved compensatory damages of $82,534, we see no reason to disturb the jury award of $30,000 punitive damages as excessive. We also reject the notion that the Landlord did not have notice of the Farmer's lease or that what he did was not so bad because he might have been right. The jury found otherwise. Based on the Farmer's testimony that the Landlord threatened to plow the 2004 crop under if the Farmer did not cooperate, the jury could have found clear and convincing evidence that the Landlord had the "conscious objective or desire . . . to cause the result" of driving the Farmer from the property regardless of his rights. **Hodges v. S.C. Toof & Co.**, 833 S.W.2d 896, 901 (Tenn. 1992).

---

[2]The Landlord alludes to "expert" testimony but stops short of arguing that the Farmer must have qualified as an expert but did not. We do not decide whether the Farmer is or is not an expert or would or would not qualify under Tenn. R. Evid. 702. That issue is not squarely presented. We note that where a witness is qualified and testifies as an expert, he or she may rely on hearsay that is "of a type reasonably relied upon by experts in the particular field in forming opinions and inferences upon the subject." Tenn. R. Evid. 703.

D.

The Landlord argues also that the trial court should have granted his motion to alter or amend the judgment. We see nothing new in that argument that we have not addressed above. Since we found no errors in the trial court's rulings, we certainly find no abuse of discretion in not reversing those rulings on the motion to alter or amend.

V.

The judgment of the trial court is affirmed in all respects. Costs on appeal are taxed jointly and severally to the appellants Pauline S. Sprouse Residuary Trust and Kerry M. Sprouse. The case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE