# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
May 14, 2013 Session

## ANTHONY OVERTON ET AL. V. HILDA GAY LOWE ET AL.

**Appeal from the Circuit Court for Scott County**
**No. 5237      John D. McAfee, Judge**

**No. E2012-02230-COA-R3-CV-FILED-AUGUST 26, 2013**

This litigation arose out of a family dispute regarding the ownership of a farm of approximately[1] 300 acres. In 1985, Mr. and Mrs. Arlie Overton, who will be referred to collectively as "the parents," conveyed their interest in the property to their five adult children. The complaint in this case alleges that, at the time of the conveyance, the parents and the children agreed that the children would transfer the property back to the parents upon their request. In 1986, three of the children conveyed their interest in the property to the other two children. In 1999, Novella Overton ("Mother") asked the two defendant daughters to transfer the property back. The daughters refused. The parents and the three grantors of the 1986 deed brought suit against the two daughters and a son-in-law, alleging breach of the oral agreement to reconvey. At the close of the plaintiffs' proof during a jury trial, the court granted the defendants' motion for a directed verdict as to all claims. We hold that there was material evidence before the jury supporting the claim that there was an oral agreement to transfer the property back to the parents. We further hold that the trial court erred in concluding, as a matter of law, that the 1986 conveyance in some way terminated the oral agreement and extinguished the parents' claim.[2] Accordingly, we vacate the directed verdict as to the claim of Anthony Overton, Executor of the Estate of Mother.[3] As to the directed verdict with respect to the claims of the plaintiffs Shairon Fay Howard, Derita Kay

---

[1] In 1983, the Overtons conveyed 1.5 acres to their daughter Hilda Gay Lowe and her husband Audie Dean Lowe. This conveyance is not at issue in this litigation. It appears that the remaining 298.5 acres, including the 25 acres conveyed to Dennis Overton in 1984, are what is at stake in the present case.

[2] The defendants argue that the plaintiffs waived this issue because their initial challenge on appeal to the trial court's grant of a directed verdict does not specifically refer to the 1986 conveyance. On this appeal, the plaintiffs presented and argued by way of an issue that the trial court erred in granting the defendants a directed verdict. The matter of the 1986 conveyance was discussed in the parties' briefs. Accordingly, we find no waiver.

[3] Arlie Overton died before the first trial and his wife died before the second trial.

McCulloch, and Arlie Dennis Overton, we affirm the trial court's judgment. This case is remanded for further proceedings as to the complaint of the Executor of Mother's estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellants, Anthony Overton, Executor of the Estate of Novella Overton, Shairon Fay Howard, Derita Kay McCulloch, and Arlie Dennis Overton.

Stephen A. Marcum, Huntsville, Tennessee, for the appellees, Audie Dean Lowe, individually and as next of kin for Hilda Gay Lowe, and Shielda May Mills.

**OPINION**

**I.**

In the mid-1980s, Arlie Overton ("Father") and his wife owned approximately 300 acres with improvements ("the property") in Scott County. In 1984, the Overtons deeded 25 acres of the property to their son, Arlie Dennis Overton, who we will refer to as "Dennis" to distinguish him from his father. In 1985, Father and Mother ran into financial difficulties and were facing foreclosure. Their five adult children – Derita Kay McCulloch, Shairon Fay Howard, Hilda Gay Lowe, Shielda May Mills, and Arlie Dennis Overton – agreed to provide financial help to save the property. They refinanced the property and, as part of the deal, Father and Mother conveyed their interest in the property to the five children by warranty deed ("the 1985 deed"). Dennis Overton also conveyed his 25 acres to the five children. According to Father, Mother, and Derita, when the 1985 deed was executed, all of the parties orally agreed that the children would convey the property back to their parents upon their parents' request.

In 1986, Derita, Shairon, and Dennis executed a warranty deed ("the 1986 deed") conveying their interest in the property to Hilda and her husband, Audie Dean Lowe, and Shielda Mills ("defendants"). Father and Mother continued to live on the property. The parties co-existed peacefully from 1986 to 1999. Defendants paid the mortgage and real estate taxes. When a small fraction of the property was taken for a public improvement, defendants handled the transaction and kept the money. Defendants took out subsequent and additional loans using the property as collateral. Defendants spent money on the property

and made some improvements. The discontent between the parties came to a head when Father saw Audie sowing seed on the farm. Father fired up his tractor and commenced to plow up Audie's freshly planted field. Heated words were exchanged which quickly led to a physical altercation between Shairon and Hilda. Plaintiffs' camp insisted that they were tired of defendants acting like they owned the place. Defendants' camp insisted that they did own it. Somewhere in the mix, Mother asked for the property back. Soon afterward, on advice of counsel, defendants mailed a notice of eviction to Mother.

On June 28, 1999, Mother, Father, Derita, Shairon, and Dennis filed this lawsuit against Hilda, Audie, and Shielda. Mother and Father alleged breach of the oral agreement to reconvey the property back to them upon request. The plaintiff children alleged that the defendants defrauded them by misrepresenting the 1986 deed documents to be an oil and gas lease on the property. Father died before the first trial. The case was tried before a jury, which returned a verdict finding that the defendants breached an agreement to reconvey, that the defendants were guilty of fraud, deceit or misrepresentation, that the property should be returned to Mother, and that the 25-acre tract formerly owned by Dennis should be returned to him. The trial judge retired before fulfilling his role as thirteenth juror, leaving his successor to attempt that task. Defendants appealed to this Court. On the first appeal, we vacated the jury verdict, holding that the successor judge was not able to approve the verdict as thirteenth juror under the circumstances because he did not preside over the trial and see and hear the evidence. *Overton v. Lowe*, No. E2007-00843-COA-R3-CV, 2009 WL 1871946 at *7-8 (Tenn. Ct. App. E.S., filed June 30, 2009) ("*Overton I*"). We further held that a directed verdict should have been granted to the defendants on the fraud, misrepresentation and deceit claim because there was no material evidence supporting that claim and because of the "fundamental problem in allowing a verdict to stand based on fraud or misrepresentation inducing the plaintiffs to sign the deed that they did not bother to read or examine." *Id.* at *10. We remanded the case for a new trial on the issue of whether there was an oral agreement to reconvey the property. *Id.* at *11.

Both Mother and defendant Hilda died before the second trial. At the second jury trial, plaintiffs presented the deposition testimony of Father, Hilda, and Shielda, in addition to Mother's testimony from the first trial. Derita testified in person, as did Anthony Overton, the Executor of Mother's estate. At the close of the plaintiffs' proof, defendants moved for a directed verdict, which the trial court granted, stating as follows:

> [T]he issue for the Court to resolve is purely a legal matter at this time. . . . I think that there is material evidence here to suggest that there was an [agreement] to reconvey back. The question [is] whether it was a year, was it – did it go on forever.

* * *

I don't think there's any question – I don't think there's even a legal dispute as to whether or not there was an agreement between the five siblings and the parents to reconvey the property back if Mom and Dad got back on their feet. I don't think that's really in dispute, and I think the record's quite clear on that.

But the issue, the legal issue for the Court to resolve now is, did the . . . deed in 1986, did that basically – did the right to reconvey, was it terminated by that? I believe that would be a legal issue, and I believe it did. I believe, in essence, the 1986 deed did away with the option to reconvey the property back, and that being the case, it did not survive past that deed. It's a purely legal issue. The Court has resolved it in favor of the defendants in this matter.

Based solely on its ruling that, as a matter of law, the execution of the 1986 deed extinguished any cause of action of Father and Mother based on the alleged oral agreement to reconvey in 1985, the trial court granted defendants a directed verdict and dismissed the case. Plaintiffs timely filed a notice of appeal.

II.

The primary issue we address is whether the trial court erred in granting defendants' motion for directed verdict at the close of plaintiffs' proof. Plaintiffs also raise the issue of whether the trial court erred "in granting [defendants'] motion in limine presented on the eve of trial and lacking in sufficient grounds." The trial court, however, did not grant the motion in limine before trial, either in whole or in part. The court reviewed the issues raised by the motion in limine, in which defendants requested the exclusion of, among other things, evidence "suggesting fraud, misrepresentation, deceit or trickery." The trial court held resolution of these issues in abeyance and addressed them one-by-one as they arose during the trial. Thus, plaintiffs are actually challenging certain evidentiary rulings of the trial court, mostly the exclusion of certain evidence on relevancy grounds.

III.

Our review of a directed verdict is well established and as stated by the Supreme Court as follows:

-4-

> This Court reviews the trial court's decision to grant a directed verdict de novo, applying the same standards as the trial court. ***Gaston v. Tenn. Farmers Mut. Ins. Co.***, 120 S.W.3d 815, 819 (Tenn. 2003). We will affirm a directed verdict "only when the evidence in the case is susceptible to but one conclusion." ***Childress v. Currie***, 74 S.W.3d 324, 328 (Tenn. 2002) (citing ***Eaton***, 891 S.W.2d at 590). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion," and must accept all reasonable inferences in favor of the nonmoving party. ***Id.*** We may affirm the motion "only if, after assessing the evidence according to the foregoing standards, [we] determine[ ] that reasonable minds could not differ as to the conclusions to be drawn from the evidence." ***Id.***; *see also* ***Cecil v. Hardin***, 575 S.W.2d 268, 270 (Tenn. 1978).

***Biscan v. Brown***, 160 S.W.3d 462, 470 (Tenn. 2005). The trial court's conclusions of law, such as its ruling that the 1986 deed operated to terminate the alleged oral agreement to reconvey the property as a matter of law, are reviewed de novo. *See* ***Ellis v. Pauline S. Sprouse Residuary Trust***, 304 S.W.3d 333, 337 (Tenn. Ct. App. 2009).

IV.

A.

There was material evidence presented at trial from which the jury could have reasonably concluded that the defendants breached an oral agreement to reconvey the property upon their parents' request. Both Father and Mother testified that there was an oral agreement by which the children and the parents' son-in-law, Audie, assured them that they would convey the property back to them upon their request. According to defendant Hilda's testimony, the agreement was that "if they wanted it back and they could pay for it, yes, they could have it back after the first year." Defendant Shielda testified similarly. The trial court explicitly found that plaintiffs presented material evidence of an agreement to reconvey. Furthermore, this Court, in ***Overton I***, held that "there was material evidence of an agreement to reconvey" after reviewing substantially the same proof. 2009 WL 1871946 at *11. The parties stipulated that, in 1999, Mother asked for the property back. All of the parties' testimony was in agreement that the defendants refused her request.

B.

The trial court concluded that, as a matter of law, "the 1986 deed did away with the [agreement] to reconvey the property back, and that being the case, it did not survive past that deed." The trial court did not cite any legal principle, rule of law, or authority that would mandate this result. By executing the 1986 deed, three of the children who then owned the property – Derita, Shairon, and Dennis – conveyed their interest to the remaining two sisters, Hilda and Shielda. Mother and Father were not parties to the 1986 deed. Assuming that there was an oral agreement made by all five children at the time of the 1985 deed that the children would convey it back upon request, it is unclear how the 1986 deed conveying one group of siblings' interests in the property to another group would bind the parents and terminate the agreement. Certainly the defendants would have been aware of the oral agreement they made a year earlier and presumably would take the property subject to that agreement. Plaintiff Derita testified on this point as follows:

> Q: And I believe that in 1986 there is a deed done where the property is out of the names of you and your sister Shairon and your brother Dennis, and then it's in the name of your sister Hilda and Shielda and Hilda's husband, correct?
>
> A: Yes.
>
> Q: When that was done, did that change the agreement any or was it still to be conveyed back to your parents?
>
> A: Still to be give[n] back to Mama and Daddy.

Moreover, in *Overton I*, we observed the following on this issue:

> Plaintiffs' fraud argument notwithstanding, *even i[f] they knowingly signed deeds into their siblings in 1986, they could have believed that the deeds were in trust for the parents, or the whole family, just as the 1985 deed was for the parents or the family*. It does seem questionable that plaintiffs could expect defendants, who were themselves people of limited means, to struggle for over a decade with the mortgage payments, but this problem is addressed somewhat with evidence that plaintiffs thought payments were being covered by lease proceeds. Moreover, it is not this court's prerogative in reviewing a motion for directed verdict to weigh the evidence.

-6-

2009 WL 1871946 at *11 (emphasis added). Finding no legal ground to support the conclusion that the 1986 deed operated to terminate the alleged oral agreement and Mother and Father's claim, we vacate the trial court's directed verdict as to that claim.[4]

C.

While we vacate the trial court's grant of a directed verdict as to the claim of the Executor of Mother's estate, we hold that the trial court correctly dismissed all of the claims made by the children plaintiffs. As the trial court rightly observed, the fraud claim based on the allegations that defendants tricked the plaintiff siblings by making them think they were signing an oil and gas lease on the property instead of a warranty deed was foreclosed by our opinion in *Overton I*. Regarding Dennis Overton's claim to the 25 acres, he did not testify at the second trial and so it appears that he has abandoned that claim. Even if he has not, Dennis signed the 1986 deed as grantor saying that he was "hereby *releasing all claims* to said property." (Emphasis added.) Dennis is bound by this clear and unambiguous language in the deed. On remand, the only remaining claim to be tried is that of Mother's estate for breach of the alleged oral agreement to reconvey.

Finally, we briefly address plaintiffs' arguments that the trial court erred in excluding evidence as irrelevant. Because of our ruling in *Overton I* that plaintiffs' claims of fraud, misrepresentation, and deceit should be dismissed, the trial court correctly excluded evidence regarding the alleged oil and gas lease and deception by the defendants. Obviously, because the issue is whether there was an oral agreement to reconvey and, if so, whether defendants breached it, any evidence bearing on the parties' understanding, whether by testimony or by evidence of their actions, is relevant. On remand, the trial court, in ruling on evidentiary matters, should be guided by this relevancy principle. Thus, proof of defendants' attempt to evict their parents in 1999 should have been admitted as relevant evidence of breach of the alleged agreement and also for fairness and completeness in light of the fact that the jury heard Hilda's testimony stating as follows:

> Q: When you do this loan in 1986, is that still for the purpose of preserving the farm for your parents?

---

[4] Defendants argue in their brief that the alleged oral agreement fails due to lack of consideration. This Court, however, has on several occasions held that "the consideration of love and affection has been deemed sufficient to support a conveyance." *Smith v. Riley*, No. E2001-00828-COA-R3-CV, 2002 WL 122917 at *3 (Tenn. Ct. App. E.S., filed Jan. 30, 2002) (citing *Thomas v. Hedges*, 183 S.W.2d 14, 17 (Tenn. Ct. App. 1944)); *see also Kilgore v. Kilgore*, No. M2006-00495-COA-R3-CV, 2007 WL 2254568 at *4 (Tenn. Ct. App. W.S., filed Aug. 1, 2007).

A: Not just the parents. For all of us.

Q: For the whole family?

A: For all of us, because we wanted to have Mom and Dad a place to live. We wanted – we didn't want to see them to go to a nursing home or a housing project. I didn't anyway.

## V.

The judgment of the trial court granting defendants a directed verdict as to the claim of Mother's estate is vacated. In all other respects the judgment is affirmed. Costs on appeal are assessed 50% to the appellants Derita Kay McCulloch, Shairon Fay Howard and Arlie Dennis Overton and 50% to the appellees, Audie Dean Lowe, individually and as next of kin for Hilda Gay Lowe, and Shielda May Mills. The case is remanded to the trial court for further proceedings, consistent with this opinion and applicable law.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE