IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 16, 2011 Session

## CENTRAL PARKING SYSTEMS OF TENNESSEE, INC. v. NASHVILLE DOWNTOWN PLATINUM, LLC

Direct Appeal from the Chancery Court for Davidson County
No. 08-1641-III     Ellen Hobbs Lyle, Chancellor

_____

No. M2010-01990-COA-R3-CV - Filed April 7, 2011

_____

NDP purchased property upon which Central Parking operated pay-parking lots pursuant to lease amendments with the prior owner. Central Parking calculated the rent it owed NDP pursuant to the amendments, but due to a computer glitch, paid double the rent it claimed was owed. NDP refused to refund the money, claiming the payment equaled the fair rental value of the property. Central Parking sued NDP for the alleged overpayment, and the trial court dismissed Central Parking's claims. Because Central Parking's only basis for relief on appeal–an implied notice theory–was first raised in a Rule 59.04 motion, and an issue first raised in a motion to alter or amend is not properly raised before the trial court, we find the issue is waived on appeal. The trial court's dismissal of Central Parking's claims is affirmed.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Mark B. Reagan, Thomas A. Sager, Nashville, Tennessee, for the appellant, Central Parking Systems of Tennessee, Inc.

Eugene N. Bulso, Jr., Paul J. Krog, Nashville, Tennessee, for the appellee, Nashville Downtown Platinum, LLC

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Central Parking System of Tennessee, Inc. ("Central Parking") operated pay-parking lots on two properties leased pursuant to five-year lease agreements with property owner, Condra-Grissim Partnership. When the original leases expired on April 30, 2003, lease amendments were executed whereby the lease would continue "on a month to month basis." The amendments provided that rent would be calculated according to the following formula: "Net Revenues minus 15% Profit Margin minus Expenses = Rent[.]"

In December 2007, Nashville Downtown Platinum, LLC ("NDP") purchased the properties from Condra-Grissim Partnership. Central Parking continued to operate its pay-parking lots until April 15, 2008. However, because of alleged communication problems with NDP, Central Parking did not pay rent from December 2007 to April 2008.

Effective April 15, 2008, Central Parking and NDP agreed to terminate any relationship which existed between them. Thereafter, Central Parking calculated the rent it owed NDP according to the formula set forth in the amendments, as $26,880.89. Due to a "software glitch[,]" however, the amount was double posted, and a check was sent to NDP for twice that amount: $53,761.78. NDP refused Central Parking's demand for a refund, claiming that it was not bound by the formula in the lease and that the amount paid was the approximate fair rental value of the property.

On July 25, 2008, Central Parking filed a complaint against NDP, claiming that "[t]he overpayment made by Central Parking to [NDP] was the result of a mistake of fact, was unintentional, and was not supported by any form of consideration[.]" Based on the theory of "money had and received[,]" Central Parking requested the court "disgorge the money paid in error or enter a judgment for [Central Parking] against [NDP] in the amount of $26,880.81[.]" NDP answered, contending that the complaint failed to state a claim for which relief could be granted, and further maintaining that Central Parking's claims were barred by the terms of the lease, due to its failure to timely make rental payments, and under the doctrines of waiver, laches, and estoppel.[1]

Following a bench trial, the trial court dismissed Central Parking's claims against NDP. The trial court incorporated into its July 13, 2010 judgment its oral findings of fact and

---

[1]Prior to NDP's answer, a default judgment was entered against NDP; however, it was subsequently set aside.

conclusions of law as follows:

It's undisputed in this case that the Plaintiff owed the Defendant rent for using the property for parking lots during the time of December '07 through April '08 after the Defendant had purchased the real property. The dispute for this Court to decide is how much did the Plaintiff owe in rent.

The Plaintiff claimed that it owed about $26,000 and that a computer-payment system it was using glitched and printed out a payment of some $53,761.78, which the Plaintiff characterizes as a double or overpayment.

The Defendant's position is that the $53,761.78 payment was the amount that the Plaintiff owed, and so that the Plaintiff did not double or overpay and that the Plaintiff is not entitled to recover any money in the case. In support of its position that the rent[] owed in this matter is $26,000 and that it overpaid, the Plaintiff has put before this Court several theories.

The Court starts with the theories that the Plaintiff has about the Defendant being bound by certain lease agreements and amendments to lease agreements. The Court concludes as a matter of law and of fact that the Defendant is not bound by the lease agreements and amendments that the Plaintiff had entered into with the previous landlord. As a matter of law, the Defendant was not a party to those lease agreements or the amendments. As a matter of law, there was no assignment of the leases or amendments to the Defendant. As a matter of law, the Defendant did not execute an assumption of the leases or the amendments or a document saying that it was a successor in interest to the leases or the amendments.

In terms of some kind of equitable theory, a contract implied in fact or estoppel, the Court as a matter of fact finds that [NDP's] Mr. Patel did not receive the leases and the amendments from [real estate broker] Mr. Blonder prior to the closing. The Court accredits Mr. Patel's testimony that he was never e-mailed the leases and amendments by Mr. Blonder. The Court finds and accredits Mr. Patel's testimony that he did not know about the specific provisions of the leases and the amendments prior to closing on the property.

Those findings of fact then preclude the application of any theory of estoppel; that is, that the Defendant is estopped now to deny the application of the leases and the amendments, and there is no basis for a contract implied in law. So both in law and in equity, the Court finds that the Defendant is not

-3-

bound by the lease agreements and amendments.

. . . .

Another possible theory of recovery that could be found in this case relates to . . . . an e-mail from Mr. Brook[s] Smith, the attorney for the Defendant. A possible theory of the Plaintiff is that this e-mail . . . indicates that there was an as[s]ent, an agreement, that the lease amendments would apply to the Defendant in this case. The Court rejects that theory and finds that that as well is not a basis for recovery by the Plaintiff because of . . . . Plaintiff's responses to requests for admissions. . . . [in which] Plaintiff said there were no contracts; there were no agreements between the Plaintiff and the Defendant. So based upon that answer by the Plaintiff to discovery, the Court finds that . . . the e-mail from Brook[s] Smith, cannot be construed as indicative of some kind of agreement for payment under the terms of the lease and the amendments.

Based on its determination that no specific rental agreement existed between the parties, the trial court found that Central Parking was bound to pay fair rental value, which it found to be equal to the amount paid.

On August 11, 2010, Central Parking filed a motion to alter or amend, arguing that the trial court erred in calculating fair rental value. It then filed, on August 25, 2010, a document styled "Supplement to Plaintiff's Motion to Alter or Amend Judgment." In this supplement, Central Parking conceded that "there were no contractual assignments, assumptions or other written agreements regarding [NDP] and the amended lease[.]" However, it argued that because NDP was aware of the month to month lease between Central Parking and Condra-Grissim Partnership, NDP took the properties subject to such.

On August 26, 2010, the trial court denied Central Parking's motion to alter or amend,[2] and Central Parking timely appealed.

## II. ISSUE PRESENTED

Central Parking presents the following issue for review:

1. Whether the trial court erred in applying a fair-market value analysis when there were

_____

[2]Pursuant to Tennessee Rule of Civil Procedure 60.01, the trial court entered an order on October 25, 2010 to correct its transposal of "plaintiff" and "defendant."

specific lease terms in place.

For the following reasons, we affirm the trial court's dismissal of Central Parking's claims.

### III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2010)**; *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV. DISCUSSION

On appeal, Central Parking argues that regardless of NDP's actual knowledge of the lease amendments' terms, it is bound by them pursuant to an "implied notice" theory. Central Parking's brief states that because NDP "knew that the properties it purchased were in the possession of a tenant, [Central Parking,] [i]t was bound to inquire into [Central Parking's] estate, which it never even attempted to do, and was affected with notice of all the facts pertaining to Central Parking's relationship to the properties purchased."

As pointed out in NDP's brief, and as supported by our review of the record, it appears Central Parking failed, in the lower court, to assert an implied notice theory based upon tenancy. In its complaint, Central Parking relied upon a "money had and received" theory, and at trial, Central Parking focused solely on NDP's alleged *actual* notice of the lease amendments. For example, in his opening statement, Central Parking's counsel, in response to NDP's defense that it "never saw the amendment[,]" submitted that it would offer proof that NDP was provided "with the original lease and the amendments before closing[.]" Central Parking agreed that its position at trial was that NDP should be "estopped to deny any application of the lease and its amendments because [it] knew about it, [it] used it as collateral, [it] relied upon it, et cetera." Furthermore, its questioning of witnesses related

to NDP's actual knowledge of the lease amendments, and in closing, Central Parking asked for reimbursement from NDP based on "the fact that [NDP] had actual notice based on the testimony of [real estate broker Ira] Blonder,[3] the contract, and just commercial reasonableness." We find no indication that Central Parking argued that the law imposed the amended lease terms upon NDP absent actual notice. Accordingly, we reject Central Parking's contention that its trial theory related to implied notice.

We likewise reject Central Parking's argument that the issue of implied notice was timely raised in the supplement to its motion to alter or amend. Assuming, arguendo, that the motion, itself, was both contemplated by the Rules and timely filed, we find that Central Parking's arguments regarding implied notice were made to advance a new theory, rather than to simply "correct a clear error of law," as Central Parking suggests. *See In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).

"The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *Id.* (citing *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) *overruled in part on other grounds by Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). "The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* (citing *Bradley*, 984 S.W.2d at 933). "A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Id.* (citing *Local Union 760 of Intern. Broth. of Elec. Workers v. City of Harriman*, No. E2000-00367-COA-R3-CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec. 8, 2000) *perm. app. denied* (Tenn. May 14, 2001); *Bradley*, 984 S.W.2d at 933).

In the supplement to its motion to alter or amend as well as in its brief to this Court, Central Parking cites several cases for the proposition that a purchaser, who knows the property is in the possession of tenants prior to purchase, is obligated to inquire into the tenants' estates, and as is charged with notice of such estates. *See Macon v. Sheppard*, 21 Tenn. 335, 1841 WL 1754, at *3 (Tenn. 1841); *Harris v. Dobson-Tankard* Co., 298 S.W.2d 28, 31 (Tenn. Ct. App. 1957); *Walgreen Co. v. Walton*, 64 S.W.2d 44, 48 (Tenn. Ct. App. Nov. 19, 1932). Central Parking argues that these cases were not cited earlier because their rationale only "became relevant and necessary [] after the Chancellor applied the wrong legal standard in deciding this case. . . . when the court vitiated the leasehold interest of [Central Parking] in disregard of all the rights afforded to [Central Parking] thereunder."

---

[3]Ira Blonder testified that he e-mailed the leases and amendments to NDP's Mr. Patel prior to purchase. Mr. Patel, however, testified that no such documents were ever e-mailed to him.

From our review of the record, it appears that Central Parking elected to prosecute this action solely on the basis of actual notice of the lease amendments, and raised the issue of implied notice only after its original theory proved unsuccessful. Because Central Parking's only basis for relief on appeal–an implied notice theory–was first raised in a Rule 59.04 motion, and an issue first raised in a motion to alter or amend is not properly raised before the trial court, *see In re M.L.D.*, 182 S.W.3d at 895-96, we find the issue is waived on appeal. ***See Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991). The trial court's dismissal of Central Parking's claims is affirmed.

## V. CONCLUSION

For the aforementioned reasons, the trial court's dismissal of Central Parking's claims is affirmed. Costs of this appeal are taxed to Appellant, Central Parking Systems of Tennessee, Inc., and its surety, for which execution may issue if necessary.


_____
ALAN E. HIGHERS, P.J., W.S.